IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01830-CYC

JOAV KOHN,

       Plaintiff/Counter-Defendant,

v.

RIEDER NORAM, INC., d/b/a
RIEDER NORTH AMERICA,

       Defendant & Counter-Defendant/
       Counter & Cross-Claimant,

v.

PAUL INGE CUSTOM BUILDERS, LLC,

       Cross-Claim Defendant/Counter-Claimant.

---

**MEMORANDUM OPINION AND ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

This case arises from a dispute between, on one side, a homeowner, Joav Kohn, and his general contractor, Paul Inge Custom Builders, LLC ("Inge"), and on the other, a subcontractor, Rieder Noram, Inc. ("Rieder"). Because Kohn and Inge assert identical claims against Rieder and none against each other, this opinion refers to them collectively as "plaintiffs." The parties have filed cross-motions for summary judgment, ECF Nos. 91, 93, and the plaintiffs have moved to exclude or strike the testimony of Rieder's expert, ECF No. 113.

Because Inge has suffered no damages from Rieder's actions, summary judgment is granted on its counterclaims against Rieder. Because Kohn has standing to sue on the contract between Inge and Rieder on agency grounds and because disputed issues of material fact exist as to his fraudulent-concealment claim, summary judgment is denied as to Kohn's claims. Because

1

disputed issues of material fact exist as to Rieder's claim that the plaintiffs breached their contractual obligations, summary judgment as to that claim is denied. But because Rieder has not supported its alleged storage-fee damages with competent evidence, summary judgment is granted as to those damages only. Finally, regarding the topics of testimony by Rieder's expert not mooted by these summary-judgment rulings, they do not constitute impermissible legal conclusions or rely on categorically false premises and, as such, the motion to exclude them is denied.

## SUMMARY JUDGMENT STANDARDS

The "[c]ross-motions for summary judgment" in this case "are treated as two individual motions for summary judgment and held to the same standard." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings but must bring forward specific facts showing a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation marks omitted). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## BACKGROUND

The following facts are undisputed and identified by reference to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

In May 2020, Kohn hired Inge to build him a custom home ("the Project") in Salida, Colorado. ECF No. 91-2. Notwithstanding Inge's general-contractor status, it obtained Kohn's approval before selecting a subcontractor or making a Project payment. ECF No. 96-2 at 51:18–52: 2, 56:1–9, 21–25, 57:1–2. [1] When Kohn decided to use Rieder's concrete panel siding for the Project, ECF No. 96-2 at 41:22–43: 13, Inge contacted Rieder to solicit a bid at Kohn's behest, explaining it was working with the homeowner. ECF No. 91-8 at 3; ECF No. 94-18 ¶ 3.

On February 8, 2021, Rieder submitted a quote of $102,000 to Inge for the "Kohn Residence." ECF No. 91-11 at 5–8. The quote stated that Rieder would store materials for free for up to 30 days, though it did not specify how storage fees thereafter would be calculated. *Id.* at 7. Inge emailed the quote to Kohn and asked for authorization to sign it, which Kohn granted.

---

[1] References to deposition transcripts are to the transcript's page number.

ECF No. 91-12 at 2. Inge then signed the quote and paid Rieder an initial $31,000 deposit, ECF No. 91-16, and, later, an additional $52,070 material deposit, comprising its only payments to Rieder on this case. ECF No. 91-17.

Much of the instant conflict revolves around an obligation in the quote for Rieder to provide stamped shop drawings, ECF No. 91-11 at 5–7, which are schematics reviewed by an independent engineer that detail how a design element will be installed on a construction project consistent with the architectural plans. *See* ECF No. 96-6 at 47–48; ECF No. 94-1 at 68:14–25. The quote specified further that "field dimensions will need to be supplied to create production drawings and fabricate panels." ECF No. 91-11 at 6.

On May 3, 2021, Rieder delivered its first shop drawings to Inge and to Kohn's architect. ECF No. 94-13. Some two months later, the architect sent Rieder revised plans and returned the shop drawings to Rieder for corresponding changes. ECF No. 94-14. They, along with Inge, later agreed to wait on resubmitting shop drawings until they received new field dimensions after window units in the Project were installed, an event that, at the time, was thought to be a couple of months away. ECF No. 94-15 at 2. It took longer; in the end, Inge sent Rieder the new field dimensions in April 2022. ECF No. 94-17. Before he did, Inge asked Rieder—on behalf of Kohn and the architect—if it would send someone to take the field dimensions since Rieder had the best understanding of what was needed for its product. ECF No. 94-16 at 2. Rieder declined. *Id.*

In May and June, Inge repeatedly asked Rieder about the timeline for revised shop drawings and panel production. *See* ECF No. 95-2. Rieder forecasted that it would have revised shop drawings by June 20, with production and shipping to follow shortly thereafter. *See id.* But internally, a Rieder employee indicated that Rieder was missing deadlines for which it was "stalling and buying time" and "getting a lot of pressure now." ECF No. 96-9. To alleviate that

pressure, she outsourced the shop-drawings revision to an independent contractor, Accurate Builds ("Accurate"), owned by Mike Ogden. *Id.*

Accurate uses a laser scanning system to obtain field dimensions. ECF No. 95-4 at 56:9–16. On June 8, Rieder sent Ogden tape-measured field dimensions Inge had provided for the Project; Ogden indicated that he would scan the Project in the next few days. ECF No. 95-3. Neither Ogden's involvement nor the use of laser scans was conveyed to the plaintiffs at the time. ECF No. 106 ¶ 42; ECF No. 96-2 at 90:21–91:3, 122:9–123:13; ECF No. 95-8 at 6.

After Ogden scanned the Project, he emailed Inge with a list of questions relating to the cutting of the panels. ECF No. 103-13. An Inge foreman responded on July 5 and requested a meeting. ECF No. 106-1 at 5–6. Accurate, Inge, and the architect met the next day. *Id.* at 2–4. Afterwards, an Accurate employee promised to send "a final set of drawings" for review before proceeding to fabrication. *Id.* at 3.

Some two weeks later, Kohn's architect emailed Rieder, asserting that he had answered all of Ogden's questions and questioning when Rieder would produce the final shop drawings. ECF No. 106-2 at 3. Rieder, in turn, asked Accurate to confirm that it had received the answers it needed, and Accurate so confirmed. *Id.* at 1–2. Two weeks after that, the architect thanked Accurate for providing revised shop drawings. ECF No. 106-3 at 3. Ogden emailed Inge, Kohn, the architect, and Rieder, asking whether Rieder could proceed to fabricating the panels, but Kohn protested that a number of unresolved issues stood in the way, including a lack of shop drawings for the Project's detached garage. *Id.* at 1–2.

Over the next six weeks, Inge, Kohn, the architect, Rieder, and Accurate continued to discuss the shop drawings. *See* ECF Nos. 94-19, 102-3, 103-11, 103-12, 103-14. Inge sent Ogden photos and field dimensions for the garage, ECF Nos. 103-11, 103-12, Ogden performed

additional scans, ECF No. 95-4 at 108:5–9, and on September 8, Rieder requested the latest architectural drawings, which the architect provided the next day. ECF No. 94-19.

Six days later, Kohn asked Rieder for an update on the shop drawings, and Rieder indicated that it would fully review the latest drawings by Friday. ECF No. 95-6 at 4–5. That apparently did not happen. The following Monday, Kohn asked again for an update and, when Rieder indicated that it needed more time, Kohn demanded a call the next morning to coordinate a refund. *Id.* at 2–4.

No refund came. Instead, Kohn, Accurate, and a Rieder executive, J.R. Hughes, met on September 21, 2022 to try to salvage their work together on the Project. ECF No. 109 ¶ 16; ECF No. 95-7. There, the parties agreed that Ogden would do a final scan after Inge completed additional construction. ECF No. 109 ¶ 18; ECF No. 91-19. Accurate would then revise the shop drawings using the field dimensions obtained from the final scan. ECF No. 91-19. At the meeting, no one mentioned billing Kohn for Accurate's services. ECF No. 106 ¶ 47.

Nevertheless, Rieder did so. Although the parties talked about Ogden's final scan, *see* ECF Nos. 103-16, 101-14, 96-7, it never came to pass. When Inge reached out to Rieder about difficulties getting the final scan done, ECF No. 91-18 at 3, Rieder responded that while Ogden's initial scan was free, subsequent scans and work to "adjust shop drawings for the scan data" would be billed and would have to be paid prior to the final scan. *Id.* at 2–3. A subsequent estimate from Rieder billed $23,990 for four "separate field scans" — three already completed and one still outstanding — and an additional $5,000 for "updates and revisions to shop drawings to accommodate field dimensions from scan," for a total of $28,990. ECF No. 91-18 at 4. Rieder reiterated that the final scan would occur after it received payment. *Id.* at 2. Inge expressed surprise and requested to speak with a senior Rieder representative, *id.* at 6, to no avail.

Although this was the first time the plaintiffs received Ogden's bills, Rieder had known of them for some time. In September 2022, Ogden had billed Rieder for $15,000, elaborating that it was "accurate and payable," but that Rieder could pay it over time as it got paid for other jobs. ECF No. 102-2 at 2–3. A month later, Ogden told Rieder to void the invoice and submitted a new project proposal for $18,550, representing "$11,050 for all previous work" and "$7,500 for final scan once finished." ECF No. 109-4 at 2-3. Subsequent correspondence indicated Ogden's belief that Rieder was conveying his bills to the plaintiffs. *Id.* at 2; ECF No. 102-6 at 2.

But given the new nature of Ogden's bills to the plaintiffs, Kohn emailed Rieder on March 20, 2023, expressing his dissatisfaction and demanding "a written response . . . detailing how [Rieder] intends to fulfill its obligation." ECF No. 95-11 at 2–3. Two days later, Hughes responded that the house was still not ready, and said that when it was, Inge should send photos to Accurate to "trigger the final building scan." ECF No. 96-1 at 2. Hughes did not mention the estimate. On March 30, Kohn sent a letter to Rieder through counsel terminating the contract. ECF No. 96-4 at 4–7.

Kohn then filed this action on July 19, 2023. ECF No. 1. Rieder answered the complaint and asserted counterclaims against Kohn and cross-claims against Inge. ECF No. 11. The parties consented to the jurisdiction of a magistrate judge, ECF No. 12, and then-Chief Magistrate Judge Michael E. Hegarty granted a motion to amend. ECF No. 72.

In the Amended Complaint, Kohn asserts six claims, three of which he continues to pursue, ECF No. 100 at 2 n.1: (1) breach of contract (Count One), ECF No. 73 ¶¶ 66–71; (2) unjust enrichment (Count Two), *id.* ¶¶ 72–76; and (3) fraudulent concealment (Count Six), *id.* ¶¶ 93–136. The last of these is titled "fraud," but treated by the parties as fraudulent concealment. *See id.*; *Rocky Mtn. Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223

(Colo. 2018); ECF No. 91 at 13. Inge asserts the same claims. *See* ECF No. 74 ¶¶ 64–133; ECF No. 100 at 2 n.1. The first two claims are rooted in Rieder's alleged failure to deliver concrete panel siding for the Project; the last claim is based on Rieder persuading Kohn not to seek a refund and to continue with the Project while allegedly concealing that it was going to charge Kohn for Accurate's services.

For its part, Rieder asserts claims of (1) breach of contract against Inge, ECF No. 11 ¶¶ 18–22; (2) breach of contract against Kohn, *id.* ¶¶ 23–27; and (3) promissory estoppel against both plaintiffs, *id.* ¶¶ 28–33. Its claims are anchored in Inge's alleged failure to provide accurate field dimensions and complete aspects of the Project in a timely manner to allow Rieder to do its part.

These motions followed. ECF Nos. 91, 93, 113.

**ANALYSIS**

## I.      Inge's Claims

Rieder first moves for summary judgment on all of Inge's claims, arguing that Inge has suffered no loss at Rieder's hands and therefore cannot maintain a claim against it. ECF No. 91 at 2. Rieder is correct.

"To establish a claim for breach of contract, a party must prove the existence of a contract, its relevant terms, breach, and damages." *Purco Fleet Servs., Inc. v. Koenig*, 240 P.3d 435, 438 (Colo. App. 2010). "Summary judgment rejecting a breach of contract claim is proper where the party claiming breach cannot prove its damages arising therefrom." *Id.* Likewise, damages resulting from the defendant's actions is a necessary element of fraud. *See Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012).

Inge has no damages stemming from Rieder's alleged breach and fraud. Deposition testimony showed that Kohn made Inge whole for the full amount that it paid to Rieder and for

the cost of securing replacement performance. ECF No. 91-7 at 59:2–60:5. Nor does Inge claim any damages "for the delay to the construction of Mr. Kohn's house." *Id.* at 60:6–16.

The plaintiffs do not contend otherwise. Instead, they argue that the collateral source rule keeps Inge's claims alive. ECF No. 100 at 5-7. Under that rule, any "third-party benefits or gifts obtained by [an] injured plaintiff accrue solely to the plaintiff's benefit and are not deducted from the amount of the tortfeasor's liability." *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2010) (en banc). It applies to contract claims as well as torts. *See Tech. Comput. Servs., Inc. v. Buckley*, 844 P.2d 1249, 1253–55 (Colo. App. 1992). The rule's policy rationale is that an injured plaintiff should not be denied "compensation to which he is entitled by virtue of a contract that either he, or someone on his behalf, entered into and paid for with the expectation of receiving the consequent benefits at some point in the future." *Volunteers*, 242 P.3d at 1088 (internal citations omitted).

But here, Kohn did not pay Inge a benefit to be realized in the future. Instead, he paid fees for Inge's general-contractor services. Such fees fall outside of the collateral source rule's ambit. *See, e.g.*, *Amtel Corp. v. St. Paul Fire & Marine Ins. Co.*, 430 F. Supp. 2d 984, 986-87 (N.D. Cal. 2006) (holding that plaintiff could not invoke the collateral source rule to recover monies that third-party insurance company paid to defend and indemnify plaintiff in another lawsuit because the payments were not "for any 'injuries' suffered by [plaintiff] as a result of [defendant's] actions"). The rule requires that "the payment would not have been made 'but for' the injury caused by the tortfeasor" or breaching party, *id.* at 987, and here, Kohn did not compensate Inge for injuries caused by Rieder but instead did so pursuant to his obligations under their fee-for-service contract. *See* ECF No. 91-2 at 4. In other words, Kohn could not have

9

withheld his payments "but for" the injuries caused by Rieder. *Amtel Corp.*, 430 F. Supp. 2d at 987. The collateral source rule, then, does not extend to this case.

Accordingly, summary judgment is granted on Inge's claims.

## II.    Kohn's Claims

Rieder also moves for summary judgment on all of Kohn's claims except for unjust enrichment, advancing two arguments. First, Rieder contends that Inge, not Kohn, was party to Rieder's quote, meaning that Kohn cannot bring a breach of contract claim. ECF No. 91 at 4–8. Second, Rieder argues that there is a lack of evidence on the fraudulent concealment claim that could show its concealment of an intent to charge for Ogden's scans at the time of the September 21, 2022 meeting. *Id.* at 13–17. These arguments fail.

### A.  Breach of Contract

Kohn argues that he can enforce the contract because Inge acted as his agent. "A person who contracts with an agent acting with authority for a disclosed or partially disclosed principal is liable to the principal as if he or she had contracted directly with the principal, unless the principal is excluded by the contract." *Filho v. Rodriguez*, 36 P.3d 199, 200 (Colo. App. 2001). Thus, "[a] contract not under seal, made in the name of an agent as ostensible principal, may be sued on by the real principal at the latter's election." *Rocky Mtn. Expl.*, 420 P.3d at 230 (internal citation and quotation marks omitted). "The same rule applies in cases in which the principal is not disclosed, unless the principal's existence is fraudulently concealed or unless there is a setoff or similar defense against the agent." *Filho*, 36 P.3d at 200.

An agency relationship arises from the "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Id.* (internal quotation marks and citations omitted). "[T]he most important factor" when determining whether an agency relationship exists is whether the principal has "the right to

control" the actions of the agent. *Moses v. Diocese of Colo.*, 863 P.2d 310, 324 (Colo. 1993); *see Farmers Life Ins. Co. v. Ignacio State Bank*, 272 P. 1116, 1117 (Colo. 1928). Agency is ordinarily a question of fact, but a court may decide the issue as a matter of law where the facts are not in dispute. *See Moses*, 863 P.2d at 324.

Here, Kohn had "the right to control" Inge's actions with respect to the Project generally and the contract with Rieder specifically, demonstrating an agency relationship. *Id.* at 324. To begin, Inge's solicitation of a bid from Rieder came at Kohn's behest. ECF No. 91-8. Then, Inge expressly requested and received Kohn's approval before signing the quote and paying the deposit, ECF 91-12, and Kohn gave uncontradicted testimony that he reviewed all subcontractor and vendor agreements before Inge signed them. ECF No. 96-2 at 56:1–9. There is no genuine dispute of material fact, then, that Inge had a duty to obey Kohn's instructions and could not have entered into the Rieder contract without his approval.

Kohn may therefore enforce the contract notwithstanding Inge having signed it. This does not depend on Rieder's awareness of the agency relationship, given the lack of evidence that Inge fraudulently concealed Kohn's existence. *Filho*, 36 P.3d at 200. In all events, Rieder can hardly claim unfair surprise. After all, Inge advised at the outset that he was working with the homeowner, the initial quote and every subsequent document was marked for the "Kohn residence" and, after Kohn demanded his money back, Hughes met with him personally, without Inge, to try to resolve the issue.

Rieder protests. The Kohn-Inge contract sets out aspects of the Project for which Inge bore no responsibility, it says, and such specifications would be superfluous if Inge were truly Kohn's agent. ECF No. 108 at 3. But parties in an agency relationship regularly delineate the scope of the agent's duties and authority. *See, e.g.*, Restatement (Third) of Agency § 1.01

11

("Ordinarily, the scope of an agency relationship is defined solely by the parties to the

relationship."). Nothing about the delineations in the Kohn-Inge contract, then, is inconsistent

with a finding of agency. Accordingly, Kohn's breach of contract claim may proceed to trial.

Because Kohn has standing on the contract claim under agency principles, the Court need

not address the plaintiffs' alternative theory of third-party-beneficiary standing. ECF No. 100 at

3-4. In addition, because Kohn and Rieder have a valid and enforceable contract, Kohn cannot

pursue an unjust enrichment claim. *See Stone Creek Bus. Ctr. LLLP v. Stone Creek-Colo., LLC*,

No. 20-cv-01413-PAB-GPG, 2022 WL 4448822, at *3 (D. Colo. Sept. 23, 2022).  That claim

will therefore be dismissed.

### B.  Fraudulent Concealment

Rieder contends that Kohn's fraudulent-concealment claim lacks evidence that Rieder

concealed its intent to charge for Ogden's services in September 2022. A claim for fraudulent

concealment requires that the defendant: (1) concealed a material existing fact that in equity and

good conscience the defendant should have disclosed; (2) knowledge on the defendant's part that

such a fact was being concealed; (3) ignorance of that fact on the plaintiff's part; (4) the intention

that the concealment be acted upon; and (5) action on the concealment resulting in damages. *See*

*Rocky Mtn. Expl.*, 420 P.3d at 234. Viewed in the light most favorable to the plaintiffs, there is

sufficient evidence of concealment to proceed to trial.

No later than September 1, for instance, weeks before the meeting in question, Ogden

sent Rieder an invoice for $15,000. ECF No. 102-2. Rieder billed the plaintiffs in March 2023

for services Accurate performed prior to that September meeting. ECF No. 91-18. And Ogden's

communications with Rieder in September and October, when he sent a revised project proposal

for $18,550, suggested that he knew or believed that Rieder was going to try to collect from

Kohn. ECF No. 102-5 at 2; ECF No. 102-6 at 2. Such facts demonstrate a genuine question as to

whether Rieder knew that it would be passing Accurate's costs to the plaintiffs when Hughes persuaded Kohn not to seek a refund and continue with Rieder.

Rieder resists this conclusion. It points to deposition testimony from Hughes and its corporate representative that Ogden agreed to perform the initial scan for free. *Id.* at 15 (citing ECF No. 91-4 at 97:11–22; ECF No. 91-20 at 139:21–141:6). But none of that precludes the possibility that by the September meeting, Rieder knew that it would be charging the plaintiffs for Ogden's subsequent scans, including the as-yet-performed final one. As Hughes himself explained, scanning is a service and "[t]here's a price to it." ECF No. 94-1 at 162:9–16.

Accordingly, Kohn's claim for fraudulent concealment may proceed to trial.

## III.    Rieder's Claims

### A.  Rieder's breach of contract claim raises genuine disputes of material fact.

The plaintiffs move for summary judgment on Rieder's claims, arguing that there is no evidence that they failed to provide necessary drawings or field measurements, or that the state of the construction prevented the final scan. ECF No. 93 at 11–13. Because disputed issues of material fact exist as to whether the plaintiffs provided Rieder with sufficiently accurate and complete field measurements, summary judgment is denied in part.

The parties agree that, under the terms of the signed quote, the plaintiffs were required to provide Rieder with field dimensions. ECF No. 109 ¶ 14; *see also* ECF No. 91-13. Although the quote is silent on the required degree of accuracy for those dimensions and the stage of the construction at which they needed to be provided, ECF No. 91-13, the plaintiffs' expert agreed that Rieder needed "accurate field dimensions to deliver accurate shop drawings." ECF No. 103-2 at 57:10–13.

It is undisputed that Inge provided Rieder with field dimensions for the home in April 2022, and several months later for the detached garage. *See* ECF Nos. 94-17, 103-11, 103-12.

13

Although Ogden asked Inge questions about the anticipated final dimensions, ECF No. 101-13 at 2, there is no evidence that either Rieder or Ogden communicated to the plaintiffs that the field dimensions Inge provided were inaccurate or premature. To the contrary, on one occasion, Ogden conveyed to Rieder that Accurate had "all of the answers" it needed to revise the shop drawings, ECF No. 106-2 at 2, and on another, indicated his view that Rieder was ready to begin fabricating the panels. ECF No. 106-3 at 2.

Nevertheless, viewed in the light most favorable to Rieder, the record contains evidence from which a reasonable factfinder could conclude that Inge's field dimensions did not fulfill the plaintiffs' contractual obligation. First, Inge asked Rieder if it would send someone out to take field dimensions since Rieder had a better idea of what information it needed for its product. ECF No. 96-16 at 2–3. Rieder declined at that time, but the request arguably conveys that Inge was uncertain about how to fulfill the plaintiffs' contractual duty. *Id.* Second, Ogden testified that when he received Inge's field dimensions, he determined that they "weren't accurate enough" for Accurate to revise the shop drawings and fabricate the panels. ECF No. 95-4 at 51:5–18. Contrary to the plaintiffs' claim, the record does not clearly establish that Ogden reviewed the field dimensions only after he told Rieder that he planned to scan the Project, rather than after he received the dimensions a few hours earlier. ECF No. 115 at 4. Third, and most importantly, Rieder's expert, Andrew Lonergan ("Lonergan"), identified multiple mathematical inconsistencies in Inge's field measurements, ECF No. 95-5 at 34–40, and testified that, based on the documents he reviewed, Rieder never received accurate and complete as-built dimensions. ECF No. 96-6 at 28:12–18; 73:16–78: 6; 85:16-25; 91:9-25, 92:1-22, 94:17–96:12; 96:16–21; 98:3–25; 101:1–7; 110:2–112:9.  Taken together, this evidence raises genuine disputes of

14

material fact as to whether the purported deficiencies prevented Rieder from producing accurate shop drawings and constituted a breach of the plaintiffs' contractual obligation.

The plaintiffs further argue that they are entitled to summary judgment because the undisputed evidence shows that Rieder's demand for an additional $28,990 prevented the final scan in March 2023, not the state of the construction. ECF No. 93 at 12–13; ECF No. 107 at 5–6. But this argument misses the mark. Rieder's submission of a change order did not alter plaintiffs' obligations under the initial quote. If Inge failed to provide workable field dimensions in the first place—a genuine dispute of material fact—a reasonable factfinder could find that the plaintiffs breached regardless of Rieder's subsequent actions, and therefore summary judgment on this claim is inappropriate. *John v. Momentum Volleyball Colo.*, 19-cv-03588-LTB-NRN, 2022 WL 22898233, at *5 (D. Colo. Jan. 26, 2022).

Rieder also brings a promissory estoppel claim, but no party disputes the existence of a valid contract, Rieder does not argue that the promissory estoppel claim survives despite the existence of the contract and, thus, this claim, like Kohn's unjust enrichment claim, must be dismissed. *See Wheat Ridge Urb. Renewal Auth. v. Cornerstone Grp. XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007).

**B. Rieder's damages from storage fees are not supported by competent evidence.**

The plaintiffs also argue that summary judgment must be granted with respect to Rieder's alleged damages from storage fees because Rieder failed to support them with competent evidence. ECF No. 93 at 13-15. They are correct.

Where a nonmovant seeks to meet its burden at summary judgment with expert opinion, the court must ensure that the opinion "both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 of the

15

Federal Rules of Evidence guides this inquiry. *Id.* An opinion offered by a qualified expert is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. It is well-established that an expert opinion "based solely on the self-serving statement of an interested party" is inadmissible. *In re HomeAdvisor, Inc. Litig.*, 16-cv-01849-PAB-KLM, 2023 WL 4734718, at *10 (D. Colo. Jul. 25, 2023) (citations omitted).

Here, Rieder has failed to establish its asserted storage-fee damages by admissible evidence that would support a verdict in its favor. Although the contract states that the plaintiffs will be charged for weekly storage fees after 30 days, ECF No. 91-13 at 3, the only evidence that Rieder submits for the amount of damages from this category comes from its expert, Lonergan. *See* ECF No. 96-5 at 33–34. His opinion that Rieder accrued $18,141.76 in storage fees and associated administration costs lacks a reliable foundation. By his own admission, he calculated this figure solely by using dates and rates supplied by Rieder's counsel. *Id.* at 31 n.38; ECF No. 96-6 at 26:2–27:2; 50:4–22; 53:1–54:4. His only independent investigation was to confirm that the contract mentioned storage fees and to subtract the service line items from the "contract value." *Id.* at 53:17–54:9. He further acknowledged that he had seen no documentation to support Rieder's storage-fee formula or the numbers underlying the storage administration fee calculation even though he would "reasonably expect" such documentation to exist. *Id.* at 51:1–7; *see id.* at 51:14–52:11; 53:1–16. Nor does Lonergan provide any explanation for accepting Rieder's beginning and end dates as the relevant period for assessing damages, or for calculating the "contract value" based on the initial quote, ECF No. 91-3, rather than the subsequent quote

that Rieder used to actually order the panels, which had a higher material subtotal, ECF No. 94-7 at 2-3.

In short, Lonergan's report and deposition provide no basis for his conclusion that Rieder's alleged damages are "reasonable." ECF No. 96-6 at 51:14–15. Rieder's only response is that its corporate counsel swore in an affidavit attached to its brief that the storage-fee formula, the labor hours, and labor hourly rate provided to Lonergan are correct. ECF No. 101 at 10 (citing ECF No. 101-24 ¶¶ 5-7). This is of no help. It merely underscores that Lonergan's expert opinion relies exclusively on "the self-serving statements of an interested party." *Mooring Capital Fund, LLC v. Knight*, 338 F. App'x 814, 822 (10th Cir. 2010) (internal citation and quotation marks omitted). A theory of damages that is little more than arguments of counsel cloaked in expert garb will not do.

Because Rieder does not support its storage-fee damages with any admissible evidence, summary judgment is granted as to these damages. This ruling does not address whether Rieder has properly disclosed or can prove any additional categories of damages. *See Best Beach Getaways, LLC v. TSYS Merch. Sols.*, 20-cv-01962-NRN, 2021 WL 3206300, at *11 (D. Colo. Jul. 29, 2021) (granting summary judgment for some categories of damages but not on liability).

IV.    **Plaintiffs' Amended Motion to Exclude Expert Testimony**

Lastly, the plaintiffs move under Rule 702 of the Federal Rules of Evidence to exclude or strike the testimony of Rieder's expert, Lonergan, on three issues: (1) Rieder's damages from storage fees and associated costs; (2) his opinions on the existence of and duties in the contractual relationships between the parties; and (3) his opinion that Rieder utilized laser scans because Inge's field measurements were deficient. *See* ECF No. 113 at 4–5. The first issue is mooted by the Court's summary-judgment ruling. The second issue is largely mooted with one exception. With respect to that exception and the final issue, the plaintiffs miss the mark.

17

As discussed in Part III.B, above, expert testimony must be reliable and relevant under Rule 702. *Kumho Tire Co.,* 526 U.S. at 147–52; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588-89 (1993). Courts have "broad discretion to evaluate whether an expert is helpful, qualified, and reliable" under this Rule, *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020), and "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note. The party offering the expert opinion has the burden of establishing its reliability and relevance. *See United States v. Nacchio*, 555 F.3d 1234, 1244 (10th Cir. 2009).

The Court addresses the plaintiffs' challenges to the second and third issues in turn: Lonergan's opinions as to the parties' contractual relationships and duties, and his opinion that Rieder used laser scans to take field dimensions because Inge's were not workable.

The plaintiffs argue that Lonergan offers four opinions about the contract constituting "impermissible legal conclusion[s]" that must be excluded: (1) Inge but not Kohn had a contractual relationship with Rieder; (2) Inge but not Kohn had the authority to terminate the contract; (3) Rieder is entitled to seek storage fees under the contract; and (4) Inge was contractually obligated "to provide accurate as-built information for use in the development of shop drawings." ECF No. 113 at 7. The first three opinions are mooted by the Court's rulings on summary judgment. The fourth is also partially a moot point; the parties agree that Inge had a contractual duty to provide field dimensions to Rieder. *See* ECF No. 109 ¶ 14. Therefore, the only remaining issue is whether Lonergan may testify as to what constitutes "accurate as-built information" in this context. Although Lonergan "may not offer an opinion that amounts to contract interpretation," to the extent that his opinion concerns the industry standard for field dimensions, it is squarely within the province of expert testimony and does not usurp the

18

factfinder's function. *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1268-69 (D. Colo. 2022); *Northmarq Fin., LLC v. Fidelity Nat. Title Ins. Co.*, 22-cv-2839-WJM-TPO, 2025 WL 2801077, at *4 (D. Colo. Oct. 1, 2025) (holding that expert could "testify as to what individual, discrete terms mean to someone in the industry, to the extent such testimony would assist the trier of fact").

Accordingly, the plaintiffs' motion to strike Lonergan's testimony on the nature of Inge's duty to provide field dimensions to Rieder is denied.

Next, the plaintiffs contend that Lonergan's opinion that Rieder, through Ogden, used laser scans to take field dimensions because it could not use those provided by Inge must be excluded because it "relies on false factual assumptions." ECF No. 113 at 8 (citing *Grieg v. Botros*, 525 F. App'x 781, 793 (10th Cir. 2013) and *Magoffe v. JLG Indus., Inc.*, CIV060973 MCA/ACT, 2008 WL 2967653, at *17 (D.N.M. May 7, 2008)). In particular, they claim that Lonergan assumes that the reason for Rieder hiring Ogden was for greater accuracy, when in fact it was because of Rieder's inability to complete shop drawings in a timely fashion. ECF No. 113 at 8–9. However, the central question that Lonergan addresses is the adequacy of Inge's field dimensions to produce shop drawings — not Rieder's reason for hiring Ogden in the first instance. ECF No. 95-5 at 17–18, 26–29, 34–43; ECF No. 96-5 at 26–27; ECF No. 96-6 at 72–73, 85–102, 110–113. To the extent Lonergan's opinion, then, mentions Rieder's reasons for hiring Ogden, it does not rely on those reasons. Instead, its factual foundation rests on disputed facts regarding the accuracy and completeness of those field dimensions, which is permissible for expert testimony. *See, e.g.*, *Tucker v. Allstate Prop. & Cas. Ins. Co.*, No. 19-cv-03693-NRN, 2021 WL 2805450, at *5 (D. Colo. Jul. 6, 2021) (an expert "is entitled to rely on the version of the facts that [the proponent party] believes it can prove" so long as those facts are in dispute).

19

And here, Lonergan's testimony regarding the purported deficiencies in Inge's field dimensions, their impact on Rieder's ability to render appropriate shop drawings, and the necessity and propriety of using a laser scan as an alternative, would be helpful to the factfinder. Without passing on the strength of his conclusions, his expert opinion relies on, among other sources, the field dimensions supplied by Inge and email communications between Inge, Rieder, and Ogden. *See, e.g.*, ECF No. 96-5 at 26–28, 34–43. Although plaintiffs disagree with Lonergan's analysis, his opinion is "sufficiently tied to the facts of the case" to satisfy Rule 702's standard for admissibility and relevance. *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal citation and quotation marks omitted). Furthermore, in a bench trial, a judge "maintains greater leeway" in admitting questionable expert testimony, although the *Daubert* standards "must still be met" even if somewhat relaxed. *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779-80 (10th Cir. 2009) (affirming district court's exclusion of expert testimony as unreliable even in a bench trial). That all militates against excluding Lonergan's testimony.

Accordingly, plaintiffs' motion to exclude or strike his testimony on this issue is denied.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant's Motion for Partial Summary Judgment, ECF No. 91, is **GRANTED in part** and **DENIED in part.** Summary judgment is **GRANTED** as to counter-claim plaintiff Inge's claims, and judgment shall enter on those claims at the conclusion of this case. It is **DENIED** as to plaintiff Kohn's claims, and Rieder's lack-of-privity affirmative defense as to Kohn is **STRICKEN**. Plaintiff Kohn's claim for unjust enrichment is **DISMISSED** with prejudice.

2. Plaintiffs' Motion for Summary Judgment, ECF No. 93, is **GRANTED IN PART** and **DENIED in part**. Summary judgment is **GRANTED** as to Rieder's breach of contract

20

claim only to the extent that Rieder may not seek damages for storage fees and associated costs, and otherwise **DENIED**. Rieder's claim for promissory estoppel is **DISMISSED** with prejudice.

3. Plaintiff's Amended Motion to Exclude or Strike the Expert Testimony of Andrew Lonergan, ECF No. 113, is **DENIED** as moot with respect to his opinions on Rieder's damages and on the parties' contractual relationships except with respect to Inge's duty to provide accurate, as-built field dimensions to Rieder for shop drawings. The Motion is **DENIED** as to his opinion on Inge's duty to provide accurate, as-built field dimensions and Rieder's need to use a laser scan due to plaintiffs' inability to provide field dimensions that met this standard.

DATED this 20th day of March, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge